**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2279
_____

FELISHATAY ALVARADO

v.

CITY OF PHILADELPHIA; DANIELLE OUTLAW,
Philadelphia Police Commissioner; P/O JAMES ASHFORD,
Police Officer - Badge No. 3802; P/O JOSHUA BURKITT,
Police Officer - Badge No. 2091; SGT. MICHAEL
CERRUTI, Badge No. 8649; ET. AL.

City of Philadelphia; Joshua Burkitt; Eric Clark; Jose
Hamoy; Kevin Mellody; Demetrius Monk; Brian Murray;
Patrick Saba; Edward Song,
                                        Appellants
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(District Court No. 2-22-cv-3763)
District Court Judge: Honorable John F. Murphy
_____

Argued July 1, 2026

(Filed: July 17, 2026)

Before:  SHWARTZ, PHIPPS, RENDELL, *Circuit Judges*.

Adam R. Zurbriggen  [ARGUED]
City of Philadelphia
Law Department

17th Floor
1515 Arch Street
Philadelphia, PA 19102

*Counsel for Appellant*


Keith T. West [ARGUED]
Victims' Recovery Law Center
3650 Winding Way
Suite 200
Newtown Square, PA 19073

*Counsel for Appellees*

_____

OPINION[*]

_____

**RENDELL**, *Circuit Judge*.

In this § 1983 action, the jury returned a verdict against the City of Philadelphia finding it liable for its failure to train, and awarded over $1 million in compensatory damages. The City appeals the District Court's orders denying its motions for a judgment as a matter of law, a new trial, or remittitur and granting Felishatay Alvarado's motion for fees and costs. Because there was insufficient evidence from which a jury reasonably could find *Monell* liability, we will reverse the order denying judgment as a matter of law and remand for consideration of the motion for fees and costs.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

I.

On June 4, 2021, Philadelphia Police Department SWAT unit officers were attempting to execute a search warrant on a homicide suspect who resided in the second-floor rear unit of a row house located at 4664 Torresdale Avenue in Philadelphia. Alvarado lived on the first floor. Officers conducted reconnaissance, during which they noticed that the street number was listed on the front door and two mailboxes marked "1" and "2" were mounted on the wall to the left of the front door. There was also a back door located at the rear. Officers knocked on the front door and announced their presence. After a few seconds following the knock, Lieutenant Demetrius Monk ordered his team to breach the front door. The front door led directly into Alvarado's apartment. Officers encountered Alvarado and one of Alvarado's dogs, which Officer Edward Song shot and killed after it bit him. The Officers cleared Alvarado's first floor unit, and, believing there was no access to the second-floor unit, left.

Alvarado brought § 1983 claims against the individual Philadelphia SWAT Officers (Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song (collectively "Officers")) who were involved in the execution of the warrant as well as the City of Philadelphia, alleging that the Officers violated her Fourth Amendment right and that the City failed to adequately train its officers in regards to carrying out a search warrant, specifically searches involving multi-unit homes.

During the five-day jury trial, Officers testified that they believed that the front door led into a common area beyond which there would be interior doors to the individual units,

rather than leading directly into the first-floor unit. The Officers that conducted reconnaissance testified that they believed the back door led to the first-floor unit. Alvarado introduced evidence of the SWAT Standard Operating Procedures ("SOPs") which detailed the City's Knock-and-Announce Rule, stating that an officer must "give or make reasonable effort to give, notice of their identity," and "await a response for a reasonable period of time after their announcement before gaining entry into the property." App. 1238. Further, the SOPs noted that while there was no exact period of time that is to be considered reasonable, "recent court decisions have shown that 30 seconds should be the minimum time police personnel should delay their entry into a property after announcing their presence and purpose." *Id.* Some of the Officers testified that they believed the execution of the warrant was consistent with city training. Alvarado's police practice expert opined that the officers violated Philadelphia Police policies and procedures. Alvarado, her sister, and her expert psychologist testified to Alvarado's emotional distress after the incident.

The jury returned a verdict finding the individual officers violated Alvarado's right to be free from an unreasonable search and finding the City liable because it had "failed to adequately train its SWAT Unit Officers in a specifically identified way that amounted to deliberate indifference and that failure was the moving force behind a violation of her Fourth Amendment right to be free from unreasonable search and seizure." SApp. 6. The jury awarded Alvarado $0 in compensatory damages against the Officers and $1,000,143.50 in compensatory damages against the City.

The City moved for a judgment as a matter of law seeking judgment notwithstanding the verdict, a new trial, or remittitur of damages. The District Court denied the City's

4

motions. The District Court granted Alvarado's petition for attorney's fees and costs, awarding her $316,830 in attorney's fees and $36,491.05 in costs.

## II.[1]

The City argues that it is entitled to judgment as a matter of law, and alternatively, that even if the verdict stands as to liability, the compensatory damages award is grossly excessive. Because we agree that the City is entitled to judgment as a matter of law, we will address only that argument.

### A. § 1983 Claim

In a § 1983 action, a plaintiff can proceed by arguing that an unconstitutional policy or custom of the municipality led to her injuries, or that her injuries were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice, *e.g.*, the failure to train, supervise, or discipline. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). Alvarado brought a failure-to-train claim, which requires that she demonstrate "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Id.* at 106. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," as here. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality

---

[1] We have jurisdiction under 28 U.S.C. § 1291. Our standard of review for a motion for judgment as a matter of law is plenary. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). Entry of judgment as a matter of law is a "sparingly" invoked remedy, *CGB Occup. Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004), that should be "granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube*, 4 F.3d at 1166.

opinion) ("A policy of inadequate training" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). It requires that the municipality's failure to train its employees in a relevant respect amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (alteration in original) (citation omitted).

Deliberate indifference is a "stringent standard of fault" that requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. "A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities." *Id.* at 62 (citation and quotations omitted).

Ordinarily, a plaintiff must show that "[a] pattern of similar constitutional violations" put the city on notice that, by failing to act, it was being deliberately indifferent to civilians' rights. *Id.* at 62. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* In unusual cases, a plaintiff can show a city's deliberate indifference even without a pattern of prior constitutional violations, called "single-incident" liability. *See id.* at 63–64 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "[I]n light of the duties assigned to specific officers or employees," *Canton* recognized, "it may happen that . . . the need for more or different

6

training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." 489 U.S. at 390. The Supreme Court stated single-incident liability would occur "in a narrow range of circumstances." *Connick*, 563 U.S. at 63 (quoting *Brown*, 520 U.S. at 409). It requires something like giving guns to the police without training them when they may shoot fleeing felons, the hypothetical posed by the Supreme Court in *Canton*. *See* 489 U.S. at 390 n.10. Because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," if the city arms the officers with firearms, "the need to train officers in the constitutional limitations on the use of deadly force" is "so obvious" that a failure to provide such training could provide a basis for single-incident municipal liability. *Id.*

But since *Canton*, the Supreme Court has never found the single-incident bar satisfied. *See Hightower v. City of Philadelphia*, 130 F.4th 352, 357 (3d Cir. 2025). In *Connick*, the Supreme Court concluded that the single-incident theory failed where the alleged failed training was not "the utter lack of an ability to cope with constitutional situations that underlies the *Canton* hypothetical," but rather the "the specific scenario related to the violation" in that case—namely, that prosecutors were not trained about particular *Brady* evidence. *See Connick*, 563 U.S. at 67. Because that "sort of nuance simply cannot support an inference of deliberate indifference," the claim failed. *Id.* Put simply, it is "vanishingly rare" to establish single-incident municipality liability. *Miller v. City of Philadelphia*, 162 F.4th 88, 94 (3d Cir. 2025). In *Thomas v. Cumberland County*, we found that a reasonable jury could conclude based on the frequency of fights and volatile

7

nature of the prison that the need for de-escalation and intervention training is "so obvious" that a single incident could support an inference of deliberate indifference. 749 F.3d 217, 225 (3d Cir. 2014). But *Thomas* involved dangerous prisoners and there was no training regarding de-escalation at all.

The City argues that Alvarado's claim must fail because she cannot prove deliberate indifference, as she did not prove a pattern of similar incidents and the situation does not satisfy the rare single-incident theory. We agree. First, Alvarado did not present a pattern of similar constitutional violations. While she points to testimony that the officers were responsible for enforcing nearly all of the search warrants in Philadelphia, this is insufficient evidence for a pattern of similar constitutional violations to put the City on notice. Moreover, her claim proceeded through trial and was presented to the jury as a single-incident theory.

Second, while the District Court described Alvarado's claim as alleging that the City failed to train the officers on the Knock-and-Announce rule by affirmatively instructing them to ignore the rule, the claim presented at trial was that the City failed to train the officers on how to execute the Knock-and-Announce rule on multi-unit residences. *See* App. 1156 (during closing argument, "But why didn't the City of Philadelphia say, 'This is how you approach a supposed house with an outside door. This is what you do, folks'? There was no training in that."), App. 1160 (during closing argument, "How about training them in multi-unit residences? . . . How about training them that so you're not violating some innocent person their rights when you're going after this other person in some place within maybe a group area, okay? You can't just willy-nilly walk through everything. How

8

about training them in that?"). But this "sort of nuance[d]" training deficiency cannot support an inference of deliberate indifference. *See Connick*, 563 U.S. at 67 (concluding that the nuance on how to train on specific *Brady* evidence cannot support inference of deliberate indifference). There is no dispute that the SWAT Officers had training on the general requirements of the Fourth Amendment, including the Knock-and-Announce rule, as detailed in the SOPs.

Alvarado analogizes her case to *Thomas*, but instead of the complete lack of training to handle a foreseeable situation in *Thomas*, 749 F.3d at 225, Alvarado's claim centers on the absence of nuanced training: how to execute search warrants in a multi-unit home.[2] This sort of nuanced training does not rise to the "so obvious" need that permits inference of the City's deliberate indifference. While Alvarado identifies testimony in which Officers stated that the way they executed the warrant was consistent with their training, this does not provide a sufficient basis from which a jury could reasonably conclude that the need for training was so obvious that the City knew to a moral certainty that the failure to provide such training would result in constitutional violations.

There is insufficient evidence from which the jury could find the City liable under a single-incident theory. Given *Canton* and *Connick*, this liability is reserved for extreme

---

[2] We note that the Officers testified that they thought they were entering a common area when they breached Alvarado's door. The significance of that is that there is no reasonable expectation of privacy in the common areas of a multi-unit dwelling so the Fourth Amendment and the Knock-and-Announce requirement that furthers its purpose are not implicated. *See, e.g.*, *United States v. Acosta*, 965 F.2d 1248, 1252–53 (3d Cir. 1992) (holding that residents did not have a reasonable expectation of privacy in common hallway behind unlocked door).

cases, and Alvarado's claim does not rise to that level to support an inference of deliberate indifference.

III.

For these reasons, we will reverse the denial of the motion for judgment as a matter of law and remand for the District Court to enter judgment for the City. We will vacate the District Court's June 9, 2025 order awarding attorney's fees and costs and remand to the District Court for further proceedings.[3]

---

[3] We decline to reach the award of attorney's fees and costs issue ourselves as it has not been briefed in its now-current state. The jury found the Officers liable but awarded no damages. The City will now have a judgment in its favor. The District Court should address the prevailing party issue anew. *See Farrar v. Hobby*, 506 U.S. 103, 110 (1992).